IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ILEANA MOSCHOS,<br><br>    Plaintiff,<br><br>vs.<br><br>CREIGHTON UNIVERSITY,<br><br>    Defendant. | 8:11CV403<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the Motion for Summary Judgment (Filing No. 22) filed by Defendant Creighton University ("Creighton" or "the University"). The parties have filed briefs and indexes of evidence in support of their respective positions. For the reasons stated below, Defendant's Motion will be granted.

## FACTUAL BACKGROUND

  Unless otherwise indicated, the following facts were presented in the parties' briefs and were supported by pinpoint citations to admissible evidence in the record that the parties have admitted, or that the parties have not properly resisted as required by NECivR 56.1[1] and Fed. R. Civ. P. 56.

  Creighton is a private university which operates several undergraduate, graduate and professional colleges or schools. One of the departments of the University is the Department of Athletics, through which Creighton makes available to its students the opportunity to participate in numerous intercollegiate sports, including women's soccer. From July 5, 1999, until the present, Bruce Erickson ("Erickson") has served as the Head Coach of Creighton's Women's Soccer program. Erickson reports to Bruce

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

Rasmussen ("Rasmussen"), Creighton's Athletic Director. In the winter of 2006-07 Erickson contacted the Plaintiff, Ileana Moschos ("Moschos" or "Plaintiff") regarding an open position for an Assistant Women's Soccer Coach at Creighton.

Moschos was a highly skilled soccer player who had played as a goalkeeper professionally in the United States and for the Greek National Team in the 2004 Olympics. She was also a very experienced assistant coach, having served as an assistant at Florida State University, Iowa State University, the University of North Texas, Sacramento State University, the University of Wyoming, and Davidson College. At the time Erickson and Moschos discussed a possible position at Creighton, Moschos was working as a volunteer assistant coach at Florida State University and taught sports management classes. In that position Moschos was earning $17,000 per year.

In January of 2007, Moschos came to Creighton for an interview, after which Erickson offered Moschos a position as Assistant Women's Soccer Coach. A one-page offer letter was prepared by Erickson outlining the financial terms, which included a $30,000.00 salary, a car stipend, and the opportunity for separate summer camp earnings. Moschos accepted the offer, and signed the offer letter on January 26, 2007, with an anticipated start date of April 2007. Moschos then returned to Florida State University to complete her work there. On March 7, 2007, a second letter was sent to Moschos, this time by a recruiter in Creighton's Human Resources Department. This letter again offered the position to Moschos, but said "The salary for this full-time non-exempt position is $14.42 per hour." The letter also stated: "This letter represents an initial offer of employment; however, it does not constitute an employment contract for any specific period of time . . . ." (Filing No. 24-5.)

2

Moschos began work at Creighton in late April 2007. From the date she started until December 7, 2007, Moschos was paid for 40 hours of work each week at $14.42 per hour. Effective December 7, 2007, Moschos's pay was changed from $14.42 per hour paid twice per month, to an annual salary, paid monthly. Moschos was aware that her compensation had been changed to a salary, but did not voice her objections to anyone at Creighton. (Filing No. 24-1 at 71:5-7.)

Creighton asserts that the change was due to an analysis conducted by Creighton's Human Resource Department regarding whether certain positions at the University were properly classified as exempt or non-exempt under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Filing No. 24-14, Aff. of Ronni Beckwith, ¶¶ 3-4.) The analysis included the position of Women's Assistant Soccer Coach, and concluded that because the primary duties of the position included independent judgment and discretion, the position should be re-classified as exempt and Moschos should be paid on a salaried basis. (*Id*. ¶¶ 5-8.) Moschos claims that she was reclassified in a salary position because she made complaints about not being paid for all hours over 40 per week, and was being directed to change her time sheets to only show 40 hours per week. (See Filing No. 25-3, Aff. of Ileana Moschos, ¶¶ 17-19.) Moschos alleges she was told by two administrative assistants within the athletic department that she was required to report 40 hours per week on each timesheet, regardless of her actual hours worked. (*Id*. ¶¶ 18, 19.)

Beginning December 9, 2007, Moschos kept no timesheets or records of her hours worked at Creighton. Effective July 1, 2008, Moschos's salary was increased to $32,000.00 per year, paid monthly. In addition to her salary from Creighton, Moschos

3

worked summer camps for Erickson for which she was paid by him $6,000.00 per summer in each of the years 2007-10. Moschos also worked summer camps at other schools or organizations for which she was paid separately by those schools or organizations. Moschos received her regular paycheck from Creighton each summer, even though Moschos was working elsewhere during those camps. Moschos asserts that her work at these camps benefitted Creighton by allowing her to evaluate potential recruits. (Filing No. 25-3 ¶ 2.) Moschos left Creighton effective June 2, 2011.

Moschos filed this lawsuit on December 1, 2011. Moschos's first claim is that Creighton owes her unpaid overtime under the FLSA. Moschos claims that Creighton improperly changed her wage status, and that Creighton owes her overtime pay under the FLSA dating back to December 1, 2008, the furthest date her claim could extend under the statute of limitations. Moschos also asserts that Creighton is liable under the principle of promissory estoppel because Moschos detrimentally relied on Creighton's promise to pay her $14.42 per hour. Third, Moschos claims on behalf of herself and others similarly situated, that Creighton had a pattern and practice of failing to pay employees' overtime wages. Fourth, Moschos claims she is owed wages under the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. § 48-1228. Finally, Moschos claims that Creighton breached its agreement to pay Moschos $14.42 per hour when it changed Moschos from an hourly compensation to a salary without her approval. Creighton denies these claims, and asserts that Moschos was properly classified as exempt from overtime pay in December 2007, and remained so throughout the balance of her employment. Creighton now asserts that Moschos's claims fail as a matter of law, and are proper for disposition by summary judgment.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor."  *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).  However, "'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'"  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

In response to the movant's showing, the nonmoving party's burden is to produce "evidentiary materials that demonstrate the existence of a 'genuine issue' for trial."  *Id.* "[T]he absence of an adequate response by the nonmovant, even after the moving party has carried its initial burden of production, will not automatically entitle the movant to entry of summary judgment."  *Lawyer v. Hartford Life & Acc. Ins. Co.*, 100 F. Supp. 2d 1001, 1008 (W.D. Mo. 2000) (citing *Celotex*, 477 U.S. at 331).  Instead, "the moving party must show that the evidence satisfies the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Id.* (citing *Celotex*, 477 U.S. at 331).  In other words, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate.  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

## DISCUSSION

### I.  Evidence of Hours Worked for FLSA Claims

Creighton argues that the Court should dismiss Moschos's claim because she cannot meet her burden of proof as to her overtime hours claimed. In a claim for unpaid overtime under the FLSA, plaintiffs must "present evidence that they worked above their scheduled hours without compensation and that the [employer] knew or should have known that they were working overtime."[2] *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 781 (8th Cir. 2009). The plaintiff bears the burden of demonstrating "(1) that the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been properly paid." *Id.* at 783 (citing *Goldberg v. Kickapoo Prairie Broad. Co.*, 288 F.2d 778, 784 (8th Cir.1961)). The parties dispute, however, the extent to which Moschos must show the amount of her uncompensated work—in essence, her damages—in order to survive summary judgment. Specifically, Creighton claims that Moschos is unable to meet her burden of proof as to the hours claimed, and the evidence upon which Moschos relies is inadmissible and unreliable. For the reasons

---

[2] Creighton does not directly argue that it lacked knowledge of any overtime hours Moschos may have worked. The Court presumes this is because, during the relevant limitations period, Creighton assumed she was exempt from the FLSA. Under the FLSA, "[a]n employee must be compensated for duties 'before and after scheduled hours ... if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity.'" *Hertz*, 566 F3d at 781 (quoting *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir.1975)). The Eighth Circuit has elaborated that "constructive knowledge of overtime work is sufficient to establish liability under the FLSA, if the [employer], through reasonable diligence, should have acquired knowledge that Plaintiffs were working in excess of their scheduled hours." *Id.* Even assuming Moschos was improperly classified, she still must present evidence that Creighton knew or should have known she worked overtime during the relevant period.

6

discussed below, the Court agrees, and concludes that Moschos has not met her burden, even under the relaxed standard articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

### A.   Relaxed Burden Under *Anderson*

The FLSA requires employers to "make, keep and preserve such records of the persons employed by him and of wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator [of the Department of Labor's Wage and Hour Division] as he shall prescribe by regulation or order . . . ." 29 U.S.C. § 211(c). If an employer has not kept adequate records of hours and wages, employees generally are not denied recovery on the ground that the precise extent of their uncompensated work cannot be proved. *Dole v. Alamo Foundation*, 915 F.2d 349, 351 (8th Cir. 1990). Rather, employees "are to be awarded compensation on the most accurate basis possible." *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). When "an employer fails to maintain accurate time records, *Anderson* relieves the employee of proving the precise extent of uncompensated work and creates a relaxed evidentiary standard." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) (citing *Anderson*, 328 U.S. at 687). Under the relaxed standard, "once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Id.* (quoting *Anderson*, 328 U.S. at 687-88). This relaxed standard only applies where

7

the existence of damages is certain, and uncertainty remains as to the amount of damages. *Id*.

###    B.    Moschos Failed to Meet Her Burden of Proving Damages

Even if Moschos's primary job duty did trigger Creighton's obligation to make, keep, or preserve records under the FLSA, and Creighton failed to do so, Moschos has not presented sufficient evidence to show the amount and extent of unpaid work as a matter of just and reasonable inference. The Eighth Circuit recently addressed this issue in *Carmody*, upholding the district court's ruling that Kansas City police officers failed to provide enough proof to survive summary judgment in an FLSA claim. The police officers alleged that their captain used a flex time policy from 2006 until 2009 in which officers received flex time or time off rather than receiving overtime compensation. 713 F.3d at 403. Neither the city nor the officers tracked the accrued flex time, and the flex time was allegedly lost if not used within a short period. *Id*. The Internal Affairs Department of the Kansas City Police Department (the "IA") investigated the flex time policy and concluded that the officers worked unpaid overtime hours. *Id*. Based on department documents, the IA investigation showed that the officers had worked 481 unpaid overtime hours. *Id*. However, the IA report could not determine whether the officers were given flex time for the unpaid overtime, and stated that the police officers were unable to "identify specific occurrences when flextime was mandated." *Id*.

The police officers sued the city, and the district court granted summary judgment for the city. *Id*. at 405. The Eighth Circuit upheld the district court's ruling, concluding that the officers' evidence was insufficient because the IA investigation could

8

not determine whether flex time or time off was used in lieu of overtime pay. *Id*. at 406-7. The court noted that the city's failure to keep accurate records allowed the district court to apply the relaxed evidentiary standard pronounced in *Anderson*. *Id*. at 406. Thus, the officers' initial burden was to prove that they carried flex time hours into a new work week, or went entirely unpaid for those hours. *Id*. at 406. The evidence before the court demonstrated that the officers were unable to identify specific occurrences when flextime was mandated. *Id*. The officers also could not provide evidence of specific dates worked, specific hours worked, or money owed. *Id*. at 407. Thus, the officers were unable "to identify any record evidence showing actual damages from unpaid work in excess of forty hours per week, in violation of the FLSA." *Id*. Considering this evidence, the Eighth Circuit concluded:

> The city's failure to provide accurate time records **reduces the officers' burden, but does not eliminate it.** Even though *Anderson* relaxes the burden of proof, the officers must still prove the existence of damages. *See Anderson*, 328 U.S. at 688. Viewed in the light most favorable to the officers, the officers have failed to provide any evidence of actual damages. Without record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime, the officers' unsupported estimations of the unpaid hours due are not enough.

*Id*. (emphasis added).

Moschos has presented minimal evidence of her overtime hours during the relevant period. In her affidavit resisting summary judgment, Moschos states that she "believes that the hours worked in years 2008-11 would be substantially similar to those listed in deposition exhibit 5 (my calendar for 2007) for the months of May-December." (Filing No. 25-3 at 5 ¶ 14.) In her deposition, Moschos testified that her hours during any week of 2008 would be "[s]imilar to the exact hours I worked in 2007 . . . ." (Filing

9

No. 24-1 at 72:8-12.) Other than references to her 2007 calendar (Filing No. 24-6), Moschos provides no evidence of actual hours worked, or money owed, for the relevant period. For example, Moschos testified that in 2009 she "worked a lot" and that could mean "some weeks 40 hours, and some weeks it could be over 40 hours." (Filing No. 24-1 at 73:17-23.) Just as the officers' estimations in Carmody were insufficient, Moschos's unsupported estimations of her hours are not sufficient to support her claims.

Moschos argues that it is up to the jury to decide whether her allegations are true, but she offers no factual allegations to substantiate her overtime claims during the relevant period.[3] Further, she provides no evidence of the amount or extent of hours she actually worked without compensation, and provides no evidence that Creighton was aware that she worked unpaid overtime hours during the relevant period.[4] Moschos's conclusory evidence is insufficient to establish the amount and extent of unpaid overtime "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687-88. Viewed in a light most favorable to Moschos, she has failed to provide any evidence of a single hour worked over 40 hours per week in the relevant period, nor has she provided any evidence of actual damages. Accordingly, regardless of the

---

[3] Moschos cites the Manual of Model Civil Jury Instructions of the Eighth Circuit, Instruction No. 16.10 (2013) which states, "If you find that the defendant failed to maintain records of the plaintiff's hours worked or that the records kept by the defendant are inaccurate, you must accept plaintiff's estimate of hours worked, unless you find it to be unreasonable." However, Moschos has not provided an estimate of her hours worked during the relevant period and this instruction is inapplicable.

[4] Several courts have determined that failure to provide such evidence merits summary judgment. *See e.g. Carmody*, 713 F.3d at 407; *Turner v. The Saloon Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010) (affirming summary judgment and stating that a plaintiff's mere assertions are insufficient to create a jury issue); *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (affirming summary judgment despite plaintiff's conclusory allegation that she had worked 210 hours of unpaid overtime); *see also* Daniels v. 1710 Realty, LLC, 497 Fed. Appx. 137, 139 (2d Cir. 2012) (stating that "[i]t is only 'once an employer knows or has reason to know that an employee is working overtime' that the employer 'cannot deny compensation simply because the employee failed to properly record or claim his overtime hours.'") (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).

limitations period or the applicability of any possible exemptions, Moschos has not met her burden under the FLSA, and her claim must be dismissed.

## II. Claims For Promissory Estoppel and Pattern or Practice

Moschos does not dispute that her claims for promissory estoppel and pattern or practice under the FLSA should be dismissed. Accordingly, Moschos's second and third theories of recovery will be dismissed.

## III. State Law Claims for Unpaid Wages

Moschos's fourth and fifth theories of recovery assert claims for breach of contract and for amounts due under the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb Rev. Stat. § 48-1231 (Reissue 2004). Creighton argues that her state law claims are based on the existence of an employment contract, and that there is no dispute that Moschos was an at-will employee. (Filing No. 23 at 20-21.) The record demonstrates that no evidence supports the existence of an employment contract, and Moschos's claim for breach fails. Moschos does not challenge this conclusion and concedes that her "state law claim is entirely dependent upon the wage and hour claim and is not a separate claim factually. It is simply another way to recover upon the same set of facts. It is not a new claim." (Filing No. 26 at 15.) Because Moschos has failed to meet her burden under the FLSA, and she concedes that her state law claims are entirely dependent upon her FLSA claims, her state law claims will be dismissed.

## CONCLUSION

Under the FLSA, Moschos bears the burden of demonstrating that she worked above her scheduled hours without compensation and that Creighton knew or should have known that she was working overtime. Moschos presented no evidence that

11

Creighton knew she worked overtime, nor has she presented any evidence of her actual damages.  Because she failed to meet her burden of proof, both her FLSA claims and state law claims under the NWPCA will be dismissed.  Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 22) filed by Defendant Creighton University is granted;

2. All other pending motions in this case are denied as moot;

3. This action is dismissed, with prejudice; and

4. A separate judgment will be entered.

Dated this 4th day of June, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge